UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRINA DIXON, on behalf of herself, individually, and on behalf of all others similarly-situated,<br><br>              Plaintiff,<br><br>    -against-<br><br>CATHOLIC CHARITIES OF BUFFALO, and THE MONSIGNOR CARR INSTITUTE, and MICHELLE ABRAHAM, individually, and MEGAN LOSTRACCO, individually, and MEICHLE LATHAM, individually, and STEVE SCHUMER, individually, and SHANNON STROM, individually, and JOSEPH FARRAUTO, individually,<br><br>              Defendants. | **COMPLAINT**<br><br>**Docket No.:** 25-cv-0588<br><br>Jury Trial Demanded |

TRINA DIXON ("Plaintiff"), on behalf of herself, individually, and on behalf of all others similarly-situated (collectively as "Rule 23 Plaintiffs," as that term is defined below), by and through her attorneys, BORRELLI & ASSOCIATES, P.L.L.C., as and for her Complaint against CATHOLIC CHARITIES OF BUFFALO ("Catholic Charities"), and THE MONSIGNOR CARR INSTITUTE ("Monsignor Carr"), and MICHELLE ABRAHAM, individually, and MEGAN LOSTRACCO, individually, and MEICHLE LATHAM, individually, and STEVE SCHUMER, individually, and SHANNON STROM, individually, and JOSEPH FARRAUTO, individually (together, where appropriate, as "Defendants"), alleges upon knowledge as to herself and her own actions, and upon information and belief as to all other matters, as follows:

## NATURE OF CASE

1.    This is a civil action seeking monetary damages and other redress against Defendants for, collectively: (i) race discrimination in violation of Title VII of the Civil Rights

Act of 1964, as amended ("Title VII"), and the New York State Human Rights Law, Executive Law Section 290 *et seq*. ("NYSHRL"); (ii) disability discrimination in violation of Title I of the Americans with Disabilities Act of 1990, as amended ("ADA") and the NYSHRL; (iii) retaliation in violation of Title VII, the ADA, and the NYSHRL; and (iv) any other claim(s) that can be inferred from the facts set forth herein.

2.    Plaintiff, who is African American and suffers from lupus and fibromyalgia, worked for Catholic Charities, a New York non-profit corporation that provides community services, and Monsignor Carr, another New York non-profit corporation that is a subsidiary of Catholic Charities that provides therapy and other mental health services, which together operated as a single employer, as a mental health counselor, from July 29, 2019, until November 23, 2022. At all relevant times unless specified otherwise, Defendant Michelle Abraham was the Assistant Director of Clinical Services at Catholic Charities and Plaintiff's direct supervisor from July 2021 onward, Megan Lostracco was the Clinical Director and was Abraham's supervisor, Meichle Latham was the Chief Financial Officer, Steve Schumer was the Chief Executive Officer ("CEO"), Joseph Farrauto was a Human Resources ("HR") representative, and Shannon Strom was the HR Director.

3.    As described below, beginning in or around August 2019, and continuing until the end of her employment, Defendants collectively subjected Plaintiff to race and disability discrimination.  With respect to race, all Defendants subjected Plaintiff to a hostile work environment by forcing Plaintiff to work with clients who displayed racist behaviors and assigning other problematic clients to her instead of to her similarly-situated colleagues of a different race and ignoring her complaints about it, and they further gave Plaintiff a performance review that focused exclusively on her race.  Concerning her disability, Defendants Strom and Farrauto denied

Plaintiff's requests for reasonable accommodation, such as being able to work from home while suffering from a disability-related illness, which was due to Defendants' inflexible leave policy of only allowing employees to work from home once a week without regard to disability-based reasons to increase those remote days.

4.    Making matters worse, after Plaintiff complained to Abraham, Strom, and Farrauto about that race and disability discrimination, they retaliated by, collectively, assigning Plaintiff a higher caseload, delaying payment of Plaintiff's wages, deliberately creating errors in Plaintiff's timesheets to interfere with Plaintiff's holiday time, removing Plaintiff's option to work from home once a week, accusing Plaintiff of stealing time, berating Plaintiff, revoking Plaintiff's benefits, taking other actions to harm Plaintiff's reputation, and ultimately terminating Plaintiff's employment.

5.    Defendants subjected virtually every employee with a disability-based need for accommodation to harassment and different terms and conditions of employment, retaliated against those who complained about that discrimination, thereby creating a chilling effect that dissuaded others from complaining, and committed several violations of the ADA and the NYSHRL company-wide affecting a number of employees including maintaining and enforcing inflexible leave policies, failing to provide leave as an accommodation, and refusing to permit employees to return to work after a medical leave of absence unless they were or are able to return to work with no limitations.

6.    Because of the foregoing, Plaintiff brings her claims as a class action pursuant to Federal Rule of Civil Procedure ("FRCP") 23, on behalf of herself, individually, and on behalf of all other African American and/or disabled workers who worked for Defendants during the relevant statutory time periods.

## JURISDICTION AND VENUE

7.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 42 U.S.C. § 2000e., *et seq* and 42 U.S.C. § 12101, *et seq*.  The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all claims arising under New York law.

8.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims for relief occurred within this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9.      On January 5, 2023, Plaintiff filed a Charge of Discrimination ("Charge") with the United States Equal Employment Opportunity Commission ("EEOC"), EEOC Charge No. 525-2022-02494, against Defendant Catholic Charities, on behalf of herself, as well as on behalf of a putative class of all those similarly-situated to her, based on, *inter alia*, race and disability discrimination and retaliation in violation of Title VII and the ADA due to the events alleged herein.

10.      On October 25, 2024, the EEOC issued a probable cause finding on a class-wide basis for race and disability discrimination.

11.      On April 8, 2025, the EEOC issued to Plaintiff a "Notice of Right to Sue."  Plaintiff commences this action within ninety days of receipt of that notice from the EEOC.

## PARTIES

12.      At all relevant times herein, Plaintiff, African American and disabled, was an "employee" entitled to protection as defined by Title VII, the ADA, and the NYSHRL, as she worked for Defendants in New York.

13.     At all relevant times herein, Defendant Catholic Charities was and is a New York not-for-profit corporation with its principal place of business located at 741 Delaware Avenue, Buffalo, New York 14209, which is authorized to receive service of process at that same address, and which is an "employer" within the meaning of Title VII, the ADA, and the NYSHRL, as it employed and employs at least fifteen and thus one or more employees.

14.     At all relevant times herein, Defendant Monsignor Carr, a subsidiary of Catholic Charities, was and is a New York corporation with its principal place of business located at 3370 Delaware Avenue, Kenmore, New York 14217, which is authorized to receive service of process at that same address, and which is an "employer" within the meaning of Title VII, the ADA, and the NYSHRL, as it employed and employs at least fifteen and thus one or more employees.

15.     Defendant Michelle Abraham was the Assistant Director of Clinical Services at Catholic Charities from in or around July 2021 through at least the end of Plaintiff's employment.

16.     At all relevant times herein, Defendant Megan Lostracco was the Clinical Director at Catholic Charities.

17.     At all relevant times herein, Defendant Meichle Latham was the Chief Financial Officer of Catholic Charities.

18.     At all relevant times herein, Defendant Steve Schumer was the Chief Operating Officer of Catholic Charities.

19.     Defendant Shannon Strom was the Director of HR at Catholic Charities from July 2021 through at least the end of Plaintiff's employment.

20.     At all relevant times herein, Defendant Joseph Farrauto was an HR representative at Catholic Charities.

## RULE 23 CLASS ALLEGATIONS

21.    Plaintiff seeks to maintain this action as a class action pursuant to FRCP 23(b)(3), on behalf of herself, individually, as well as on behalf of all African American and/or disabled employees who are similarly-situated to her, whom Defendants have subjected to similar violations of Title VII, the ADA, and the NYSHRL.

22.    Under FRCP 23(b)(3), Plaintiff must plead that:

a. The class is so numerous that joinder is impracticable;

b. There are questions of law or fact common to the class that predominate over any individual questions of law or fact;

c. Claims or defenses of the representative are typical of the class;

d. The representative will fairly and adequately protect the class; and

e. A class action is superior to other methods of adjudication.

23.    Plaintiff seeks certification of the following FRCP 23 class:

Current and former disabled employees (as defined by the ADA), who during the applicable statutory period, worked at Catholic Charities located in Buffalo, New York, and who reported, either directly or indirectly, to any of the Defendants ("Rule 23 Plaintiffs").

### Numerosity

24.    At all times during the applicable statutory period Defendants have, in total, employed at least forty employees that are putative members of this class.

### Common Questions of Law and/or Fact

25.    There are questions of law and fact common to each and every Rule 23 Plaintiff that predominate over any questions solely affecting individual members of the FRCP 23 class, including, but not limited to, the following: (1) whether the Defendants subjected the Rule 23

Plaintiffs to disability discrimination by maintaining and enforcing inflexible leave policies, failing to provide leave as an accommodation, and refusing to permit employees to return to work after a medical leave of absence unless they are able to return to work with no limitations; (2) whether Defendants, upon receiving the Rule 23 Plaintiffs' complaints and/or reports about race and/or disability discrimination and/or otherwise learning about it, failed to stop their conduct; (3) whether Defendants retaliated against the Rule 23 Plaintiffs for complaining about race and/or disability discrimination by either harassing them and/or taking various adverse employment actions against them; (4) whether Defendants maintain any defenses, affirmative or otherwise, to the Rule 23 Plaintiffs' claims; (5) whether the Defendants' actions with respect to the Rule 23 Plaintiffs were and are in violation of Title VII, the ADA, and the NYSHRL; and (6) if so, what constitutes the proper measure of damages.

### Typicality of Claims and/or Defenses

26.     As described in the "Background Facts" section below, Defendants employ and/or employed Plaintiff and the Rule 23 Plaintiffs in New York.  Plaintiff's claims are typical of the claims of the Rule 23 Plaintiffs whom she seeks to represent, as the Rule 23 Plaintiffs: work and/or have worked for Defendants in New York and were and/or are subjected to disability discrimination, which included and includes maintaining and enforcing inflexible leave policies, failing to provide leave as an accommodation, and refusing to permit employees to return to work after a medical leave of absence unless they were able to return to work with no limitations; and were and/or retaliated against for complaining about Defendants' discriminatory practices. Plaintiff and the Rule 23 Plaintiffs have all sustained similar types of damages as a result of Defendants' failure to comply with the ADA and the NYSHRL.  Plaintiff and the Rule 23 Plaintiffs all have suffered mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and

suffering, due to Defendants' common policies, practices, and patterns of conduct, as well as economic loss. Thus, Plaintiff's claims and/or Defendants' defenses to those claims are typical of the Rule 23 Plaintiffs' claims and/or Defendants' defenses to those claims.

<u>Adequacy</u>

27.     Plaintiff, as described below, worked at Catholic Charities, as did the Rule 23 Plaintiffs. Defendants subjected Plaintiff to disability discrimination, which included, *inter alia*, maintaining and enforcing inflexible leave policies, failing to provide leave as an accommodation, and refusing to permit plaintiff to return to work after a medical leave of absence unless she was able to return to work with no limitations. Additionally, following Plaintiff's numerous complaints of race and disability discrimination, Defendants retaliated by subjecting Plaintiff to several adverse employment actions. All that Plaintiff experienced is substantially similar to how Defendants have treated and treat the Rule 23 Plaintiffs. Plaintiff fully anticipates providing discovery responses and testifying under oath as to all of the matters raised in this Complaint and that will be raised in Defendants' Answer that pertain to her. Thus, Plaintiff would properly and adequately represent the current and former employees whom Defendants have subjected to the treatment alleged herein.

28.     Additionally, Plaintiff's counsel has substantial experience in this field of law.

<u>Superiority</u>

29.     Plaintiff has no, or very few, material facts relating to the Rule 23 Plaintiffs' claims that are atypical of those of the putative class. Indeed, at all relevant times herein, Defendants have treated Plaintiff nearly identically, or at the very least, substantially similarly, to the Rule 23 Plaintiffs.

30.     Any lawsuit brought by a current or former employee of Defendants for the same violations alleged herein would be identical to a suit brought by any other similarly-situated employee for the same violations.  Thus, separate litigation would risk inconsistent results.

31.     Accordingly, this means of protecting Rule 23 Plaintiffs' rights is superior to any other method, and this action is properly maintainable as a class action under FRCP 23(b)(3).

General Background

32.     Defendant Catholic Charities is a New York non-profit corporation that provides community services located at 741 Delaware Avenue, Buffalo, New York.

33.     Defendant Monsignor Carr is a New York non-profit corporation that provides community services located at 3370 Delaware Avenue, Kenmore, New York.

34.     Defendant Monsignor Carr is a subsidiary of Catholic Charities. Catholic Charities controls the compensation received by the employees of Monsignor Carr, and both institutions share the same CEO   the same voting members, and the same HR department.

35.     All of the individual Defendants held the roles at Catholic Charities as identified in the parties section above.

36.     In July 2019, Catholic Charities hired Plaintiff to work part-time as a mental health counselor based on Catholic Charities' desire to hire an African American person as a therapist, given that Catholic Charities had none at the location in which they were hiring Plaintiff.  Plaintiff remained in this position until November 23, 2022.  In this role, Plaintiff's primary duties consisted of providing clients with mental health counseling both virtually and in-person, performing mental health assessments, making mental health diagnoses, completing treatment plans based on every client's unique challenges, working with schools to help students with behavioral issues by

providing accommodations or individualized learning plans, working with Child Protective Services, and contacting different institutions to find other resources for families who needed them.

37.     Throughout Plaintiff's employment, she reported directly to her manager - - Beth Tripi- - initially and after Abraham joined Catholic Charities, to Abraham.

38.     An African American person had never held Plaintiff's position.


Race discrimination

39.     Beginning in or around 2019 and continuing until the end of Plaintiff's employment, Defendants discriminated against Plaintiff due to her race.   Specifically, Catholic Charities had assigned her clients who had discriminated against her because of her race.  For example, in 2021, a client's guardian asked Plaintiff if she was African American, then questioned her credentials by asking where Plaintiff went to school and asking how long Plaintiff has been working in her field. On at least five occasions between 2019 and 2021, clients had asked to be transferred away from Plaintiff because of her race.  On at least three occasions, an adult client, or the relatives of a minor client, called Plaintiff a "n*gger."  Catholic Charities forced Plaintiff to continue working with these clients even though the clients could have been assigned to a Caucasian mental health counselor.

40.     Defendants also assigned other problematic clients to her instead of to her similarly-situated colleagues of a different race, and assigned non-racist but otherwise problematic clients to Plaintiff because of her race.  For example, in May of 2022, a child was so violent to the other mental health counselors that Abraham transferred the child to Plaintiff.  Plaintiff asked why Abraham was doing this, and Abraham responded "she will never do this kind of stuff to you," to

which Plaintiff asked, "why? Because I'm Black?"  Abraham responded "well…" and shrugged her shoulders.

41.     In August or September 2021, Abraham provided Plaintiff with a performance review in which she wrote: "strengths are Cultural Diversity: Ms. Dixon has embraced the role of being the first African American therapist at this clinic which is located in a neighborhood known for not being accepting of different races."  In doing this, Abraham completely ignored Plaintiff's extensive experience and qualifications.

42.     On May 14, 2022, a mass shooting occurred in Buffalo.  Plaintiff, who personally knew some of the victims, asked Abraham for a day off to grieve.  Abraham told her that she could have a day off, but that it would be unpaid.  However, Catholic Charities told all the other employees that they would have a paid day off on May 15, 2022, but Abraham and Lostracco did not reimburse Plaintiff for taking a day off on May 14, 2022.

43.     In addition, Abraham and Lostracco asked Plaintiff to explain why she should even have the day off even though they didn't ask other non-African American employees the same question.

44.     On or around June 19, 2022, Plaintiff learned that the employees would not be paid for Juneteenth, which became a federal holiday in 2021, even though they were paid for other federal holidays.  Abraham and Lostracco asked Plaintiff to explain why she thought the holiday was significant to her, which offended Plaintiff, who thought the answer should be obvious.

Disability Discrimination

45.     Plaintiff suffers from lupus and fibromyalgia.  These disabilities cause muscle spasms, nerve pain, bone pain, migraines, rashes, immune system weakness, and fatigue in the

Plaintiff, rendering it difficult to walk or stand for long periods of time.  They also render Plaintiff more susceptible to other types of illnesses such as the flu, requiring her to take extra precautions when out in public.  To treat these conditions, Plaintiff has received steroid injections, physical therapy, and medication, which caused problems with her eyesight.

46.    Beginning in 2021, Catholic Charities created an inflexible leave policy in which employees were strongly discouraged from working remotely more than once a week or even taking leave at all.

47.    Notwithstanding that policy, due to Plaintiff's lupus and fibromyalgia, she often times required additional days to work from home.

48.    Thus, in April 2022, Plaintiff caught a cold and asked to work from home.  Abraham denied Plaintiff's request and told her to wear a mask in the office.  In May 2022, Plaintiff and several other employees caught COVID.  Plaintiff requested to work remotely as she was bedridden, but Abraham asked Plaintiff to come to the clinic.  In July 2022, Plaintiff experienced a flare-up of her lupus and fibromyalgia, felt aches and pains throughout her body, and asked to work from home.  Abraham denied her request once again.


Plaintiff's Complaints About Race and Disability Discrimination

49.    From 2019 onward, Plaintiff asked Catholic Charities to be transferred away from some of her problematic clients because she could not tolerate the stress and lack of safety they caused.  For example, a client threw hot coffee on Plaintiff and another one threatened to batter her.  Plaintiff complained about racial discrimination, specifically that she felt she was receiving all of the problematic clients because of her race.

50.     Plaintiff also complained that the racism she received from some of her clients made her uncomfortable and that she felt she was being racially discriminated against by Catholic Charities because Catholic Charities forced her to continue working with these clients.

51.     From July 2021 onward, Abraham forced Plaintiff to continue working with the clients and did not address any of her complaints.

52.     Despite this, in or around late 2020, her supervisors did find the time to address an allegation from a client that Plaintiff had made racist remarks to the client because the client was Caucasian and adopted an African American child.  Nothing resulted from this allegation.

53.     In 2021, Plaintiff complained to Abraham that Defendants were not granting her disability-related reasonable accommodation requests and expressed her belief that Defendants were discriminating against her for her disabilities.


Defendants Retaliate Against Plaintiff for Her Protected Complaints

54.     In retaliation to these complaints about race and disability discrimination, Abraham gradually assigned Plaintiff a higher caseload, which required her to work just as much as a full-time employee despite being part-time.

55.     In September 2021, to make Plaintiff look bad, Abraham emailed that Catholic Charities had been receiving complaints about Plaintiff from clients, even though every mental health specialist had received at least some complaints from clients.  Abraham also falsely claimed that Plaintiff had taken days off without notifying her supervisor.

56.     In October 2021, Abraham told Plaintiff that she would no longer be allowed to work from home, even though company policy, as detailed above, allows employees to work from home one day a week.

57.     In May 2022, when Abraham transferred a violent client to Plaintiff because of Plaintiff's race, as mentioned above, Plaintiff expressed her offense to Abraham, who then attempted to write Plaintiff up for insubordination.  Plaintiff challenged Abraham by threatening to tell everyone why she would not accept the problematic client, and Abraham dropped the complaint.

58.     In July 2022, Plaintiff was due to have bladder surgery, told Strom that she was requesting leave pursuant to FMLA, and requested disability paperwork.  Strom refused to give her the paperwork and falsely told her that she was not eligible for FMLA because she did not work enough hours, even though Plaintiff did.

59.     On August 3, 2022, Plaintiff left on disability leave.  On or around August 5, 2022, Strom finally sent Plaintiff the disability paperwork.

60.     In or around August 2022, Strom told Plaintiff that she was entitled to less paid time than previously thought.  Plaintiff spoke to a former employee, who told Plaintiff how to pull up her eligible PTO.  Plaintiff did this and discovered that Strom had lied to her.

61.     In August 2022, Plaintiff complained about her lack of eligible paid time off to Strom and Farrauto, who responded by berating Plaintiff, telling her to "shut up," and telling Plaintiff that she was causing trouble.

62.     In or around August 2022, Strom told Plaintiff that she was now only eligible for six days of holiday pay because she was a part-time employee, even though Plaintiff was previously eligible for more.  Strom also said that Plaintiff was no longer eligible for floating holidays (for when a holiday already falls on a day off) or paid medical time, despite Plaintiff being eligible for all these benefits since she started her employment.

63.    On August 18, 2022, Plaintiff complained about her lack of benefits to Latham, who did not immediately respond.

64.    On October 31, 2022, Plaintiff met with Latham, Abraham, Strom, and Lostracco about problems she was having with Strom and Farrauto.

65.    During the meeting, Latham and Abraham told Plaintiff that they were unaware of a policy of part-time employees only being eligible for six days of holiday pay.  After the meeting, Plaintiff told Latham that she wanted an apology from Strom and Farrauto.  Plaintiff never received such an apology.

66.    In October 2022, Abraham singled out Plaintiff's timesheet and put every single hour under scrutiny, telling Plaintiff to correct any mistake she found.  Abraham did not do this with any of the other 4-5 people whom she supervised.

67.    In November 2022, Strom also told Plaintiff that she had exceeded her holiday benefits for the previous year and thus would not be eligible to any holiday time for the rest of 2022.

68.    This was not true, as Abraham had already approved Plaintiff's request to take off a few days around Thanksgiving back in February.

69.    When Plaintiff complained to Strom and Farrauto about this, Strom responded, *via* email, that "maybe Catholic Charities is not the right place for you."  Farrauto repeated this sentiment in the same email chain.

70.    Strom's and Abraham's refusal to correct this error forced Plaintiff to cancel a family vacation that she had planned in February.

71.    On November 21, 2022, Abraham accused Plaintiff of stealing time.  This accusation was delivered *via* an email addressed to Plaintiff, Latham, Strom, and Farrauto.

72.     This accusation was false, as Plaintiff had to work late on occasion to deal with problematic clients and complete mandatory workplace training.

73.     On November 23, 2022, despite Plaintiff being a competent and diligent employee for nearly three-and-a-half years, Abraham and Strom terminated her employment *via* phone call, and Strom and Farrauto gave Plaintiff a written termination letter a few days later.

74.     Moreover, during her employment, Plaintiff observed Catholic Charities discriminate against other disabled employees by failing to provide proper accommodations to them and retaliating against the employees when the employees complained about the lack of accommodations, creating a chilling effect that dissuaded others from complaining.

75.     Thus, Defendants treated Plaintiff and Rule 23 Plaintiffs in the same manner described herein.

### FIRST CLAIM FOR RELIEF AGAINST DEFENDANT CATHOLIC CHARITIES
### *Race Discrimination in Violation of Title VII*

76.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

77.     Title VII prohibits employers from discriminating against employees, on the basis of their race, in terms, conditions, or privileges of employment.

78.     As described above, Defendant Catholic Charities was and is an "employer" within the meaning of Title VII, while Plaintiff was an "employee" within the meaning of Title VII.

79.     As also described above, Defendant Catholic Charities discriminated against Plaintiff, on the basis of her race, in violation of Title VII, by subjecting Plaintiff to an environment replete with racist behavior from her clients, ignoring her complaints about it, and by denying her the opportunity to work in an employment setting free of unlawful discrimination.

80. As a direct and proximate result of Defendant Catholic Charities' unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered, and continue to suffer, mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

81. Defendant Catholic Charities' unlawful discriminatory actions constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to an award of punitive damages.

**SECOND CLAIM FOR RELIEF AGAINST CATHOLIC CHARITIES, STEVE SCHUMER,  AND MICHELLE ABRAHAM**
*Race Discrimination in Violation of the NYSHRL*

82. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

83. The NYSHRL prohibits employers from discriminating against employees, on the basis of their race, in terms, conditions, or privileges of employment.

84. As described above, Defendant Catholic Charities was and is an "employer," Defendant was the Assistant Director of Clinical Services of Defendant Catholic Charities, Defendant Megan Lostracco was the Clinical Director of Defendant Catholic Charities, Defendant Meichle Latham was the Chief Financial Officer of Defendant Catholic Charities, Defendant Steve Schumer was the Chief Executive Officer of Defendant Catholic Charities, Defendants Shannon Strom and Joseph Farrauto were in the HR Department of Defendant Catholic Charities, and all Defendants participated in the discriminatory and retaliatory acts, subjecting them all to individual liability under the NYSHRL, while Plaintiff was an "employee" within the meaning of the NYSHRL.

17

85.     As also described above, Defendants discriminated against Plaintiff, on the basis of her race, in violation of the NYSHRL, by subjecting Plaintiff to an environment replete with racist behavior from her clients, ignoring her complaints about it, and by denying her the opportunity to work in an employment setting free of unlawful discrimination.

86.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

87.     Defendants' unlawful discriminatory actions constitute malicious, willful, and wanton violations of the NYSHRL, for which Plaintiff is entitled to an award of punitive damages.

### THIRD CLAIM FOR RELIEF AGAINST DEFENDANT CATHOLIC CHARITIES
#### *Disability Discrimination in Violation of the ADA*

88.     Plaintiff and Rule 23 Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

89.     Title I of the ADA prohibits employers from discriminating against their employees on the basis of their disability, in terms, conditions, or privileges of employment.

90.     As described above, Defendant Catholic Charities was and is an "employer" within the meaning of the ADA, while Plaintiff and Rule 23 Plaintiffs were and are "employees" who suffered from a "disability."

91.     As also described above, Defendant Catholic Charities discriminated against Plaintiff and Rule 23 Plaintiffs, on the basis of their disability, in violation of the ADA, by subjecting Plaintiff and Rule 23 Plaintiffs to different terms and conditions of employment, and by denying them the opportunity to work in an employment setting free of unlawful discrimination.

92.     As a direct and proximate result of Defendant Catholic Charities' unlawful conduct in violation of the ADA, Plaintiff and Rule 23 Plaintiffs have suffered, and continue to suffer, economic loss, for which they are entitled to an award of monetary damages and other relief.

93.     As a direct and proximate result of Defendant Catholic Charities' unlawful conduct in violation of the ADA, Plaintiff and Rule 23 Plaintiffs have suffered, and continue to suffer, severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which they are entitled to an award of monetary damages and other relief.

94.     Defendant Catholic Charities' unlawful discriminatory actions constitute malicious, willful, and wanton violations of the ADA, for which Plaintiff and Rule 23 Plaintiffs are entitled to an award of punitive damages.

**FOURTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS**
*Disability Discrimination in Violation of the NYSHRL*

95.     Plaintiff and Rule 23 Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

96.     The NYSHRL prohibits employers from discriminating against employees, on the basis of their disability, in terms, conditions, or privileges of employment.

97.     As described above, Defendant Catholic Charities was and is an "employer," Defendant was the Assistant Director of Clinical Services of Defendant Catholic Charities, Defendant Megan Lostracco was the Clinical Director of Defendant Catholic Charities, Defendant Meichle Latham  was the Chief Financial Officer of Defendant Catholic Charities, Defendant Steve Schumer was the Chief Executive Officer of Defendant Catholic Charities, Defendants Shannon Strom and Joseph Farrauto were in the HR Department of Defendant Catholic Charities, and all Defendants participated in the discriminatory and retaliatory acts, subjecting them all to

individual liability under the NYSHRL, while Plaintiff and Rule 23 Plaintiffs were and are "employees" who suffer from a "disability" within the meaning of the NYSHRL.

98.    As also described above, Defendants discriminated against Plaintiff and Rule 23 Plaintiffs, on the basis of their disability, in violation of the NYSHRL, by subjecting Plaintiff and Rule 23 Plaintiffs to different terms and conditions of employment, and by denying them the opportunity to work in an employment setting free of unlawful discrimination.

99.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff and Rule 23 Plaintiff have suffered, and continue to suffer, mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which they are entitled to an award of monetary damages and other relief.

100.    Defendants' unlawful discriminatory actions constitute malicious, willful, and wanton violations of the NYSHRL, for which Plaintiff and Rule 23 Plaintiffs are entitled to an award of punitive damages.

**FIFTH CLAIM FOR RELIEF AGAINST DEFENDANT CATHOLIC CHARITIES**
*Retaliation in Violation of Title VII*

101.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

102.    Title VII prohibits employers from retaliating against employees who engage in activity protected under Title VII.

103.    As described above, Defendant Catholic Charities was and is an "employer" within the meaning of Title VII, while Plaintiff was an "employee" who engaged in activity protected under Title VII.

104.    As also described above, after Plaintiff engaged in activity protected under Title VII, Defendant Catholic Charities retaliated against her as also described above.

105.    As a direct and proximate result of Defendant Catholic Charities' unlawful retaliatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, economic loss, for which she is entitled to an award of monetary damages and other relief.

106.    As a direct and proximate result of Defendant Catholic Charities' unlawful retaliatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

107.    Defendant Catholic Charities' unlawful retaliatory actions constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to an award of punitive damages.

### SIXTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
#### *Retaliation in Violation of the NYSHRL*

108.    Plaintiff and Rule 23 Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

109.    The NYSHRL prohibits employers from retaliating against employees who engage in activity protected under the NYSHRL.

110.    As described above, Defendant Catholic Charities was and is an "employer," Defendant was the Assistant Director of Clinical Services of Defendant Catholic Charities, Defendant Megan Lostracco was the Clinical Director of Defendant Catholic Charities, Defendant Meichle Latham was the Chief Financial Officer of Defendant Catholic Charities, Defendant Steve Schumer was the Chief Executive Officer of Defendant Catholic Charities, Defendants Shannon

Strom and Joseph Farrauto were in the HR Department of Defendant Catholic Charities, while Plaintiff and Rule 23 Plaintiffs were and are "employees" who engaged in activity protected under the NYSHRL.

111.    As also described above, after Plaintiff and Rule 23 Plaintiffs engaged in activity protected under the NYSHRL, Defendant Catholic Charities retaliated against them as also described above.

112.    As a direct and proximate result of Defendant Catholic Charities' unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff and Rule 23 Plaintiffs have suffered, and continue to suffer, economic loss, for which they are entitled to an award of monetary damages and other relief.

113.    As a direct and proximate result of Defendant Catholic Charities' unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff and Rule 23 Plaintiffs have suffered, and continue to suffer, severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which they are entitled to an award of monetary damages and other relief.

114.    Defendant Catholic Charities' unlawful retaliatory actions constitute malicious, willful, and wanton violations of the NYSHRL, for which Plaintiff and Rule 23 Plaintiffs are entitled to an award of punitive damages.

**SEVENTH CLAIM FOR RELIEF AGAINST DEFENDANT CATHOLIC CHARITIES**
*Retaliation in Violation of the ADA*

115.    Plaintiff and Rule 23 Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

116.    Title I of the ADA prohibits employers from retaliating against employees who engage in activity protected under the ADA.

117.    As described above, Defendant Catholic Charities was and is an "employer" within the meaning of the ADA, while Plaintiff and Rule 23 Plaintiffs were and are "employees" who engaged in activity protected under the ADA.

118.    As also described above, after Plaintiff and Rule 23 Plaintiffs engaged in activity protected under the ADA, Defendant Catholic Charities retaliated against them as also described above.

119.    As a direct and proximate result of Defendant Catholic Charities' unlawful retaliatory conduct in violation of the ADA, Plaintiff and Rule 23 Plaintiffs have suffered, and continue to suffer, economic loss, for which they are entitled to an award of monetary damages and other relief.

120.    As a direct and proximate result of Defendant Catholic Charities' unlawful retaliatory conduct in violation of the ADA, Plaintiff and Rule 23 Plaintiffs have suffered, and continue to suffer, severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which they are entitled to an award of monetary damages and other relief.

121.    Defendant Catholic Charities' unlawful retaliatory actions constitute malicious, willful, and wanton violations of the ADA, for which Plaintiff and Rule 23 Plaintiffs are entitled to an award of punitive damages.

## **DEMAND FOR A JURY TRIAL**

122.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff and Rule 23 Plaintiffs demand a trial by jury on all claims in this action.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff and Rule 23 Plaintiffs demand judgment against Defendants as follows:

a.    A judgment declaring that the practices complained of herein are unlawful and in violation of the aforementioned United States and New York State laws;

b.    Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

c.    An order restraining Defendants from any retaliation against Plaintiff and/or Rule 23 Plaintiffs for participating in any form in this litigation;

d.    Certification of the claims brought in this case as a class action pursuant to FRCP 23;

e.    Designation of Plaintiff and her counsel as class action representatives;

f.    Granting Plaintiff and Rule 23 Plaintiffs all economic damages that they have sustained as a result of Defendants' conduct, including general and special damages for past and future lost compensation and benefits that they would have received but for Defendants' conduct, including but not limited to back pay and front pay, whether legal or equitable in nature;

g.    Granting an award of damages to be determined at trial to compensate Plaintiff and Rule 23 Plaintiffs for emotional distress and/or mental anguish, and damages for the harm caused to their professional and personal reputations, in connection with their claims;

h.      Granting an award of punitive damages, to the extent permitted by law,

i.      Granting Plaintiff and Rule 23 Plaintiffs their reasonable attorneys' fees, as well as their costs and disbursements incurred in connection with this action, including expert witness fees and other costs;

j.      Awarding pre-judgment and post-judgment interest, as provided by law; and

k.      Granting Plaintiff and Rule 23 Plaintiffs other and further relief as this Court finds necessary and proper.

Dated:  Garden City, New York
        July 7, 2025

Respectfully submitted,

BORRELLI & ASSOCIATES, P.L.L.C.
*Attorneys for Plaintiff*
910 Franklin Avenue, Suite 200
Garden City, New York 11530
Tel. (516) 248-5550
Fax. (516) 248-6027

By:    _____
       ANTHONY P. CONSIGLIO (4999603)